IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LOUISE P. BATSTONE, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-20-00937 |
| CHICAGO TITLE INSURANCE COMPANY, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

Plaintiffs Louise P. Batstone and Griffith R.D. Batstone (the "Batstones") bring this case seeking defense and indemnity under a Homeowner's Title Insurance Policy (the "Policy") purchased from the Defendant Chicago Title Insurance Co. ("Chicago Title") with respect to a lawsuit filed in the Circuit Court for Anne Arundel County, Maryland, naming them among the Defendants. The Batstones seek partial summary judgment that Chicago Title has breached its contract by denying them a defense and seek a declaratory judgment that the Chicago Title owes them a defense. (*See* ECF No. 3.) In its response, Chicago Title has filed a Cross Motion for Summary Judgment, seeking declaratory judgment that the claims of the Batstones are not covered by the Policy. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 3) is DENIED; and Defendant Chicago Title Insurance Co.'s Cross Motion for Summary Judgment (ECF No. 12) is GRANTED.

1

## BACKGROUND

The Batstones bring this case to obtain defense and indemnity under a Homeowner's Title Insurance Policy (the "Policy"). (*See* Compl., ECF No. 1.) On July 31, 2018, the Batstones closed on their purchase of a new home, the property known as 1003 Covington Way, Annapolis, Maryland 21401. (ECF No. 3-1 at 2.) In conjunction with the purchase of the home, the Batstones purchased the Policy from Chicago Title. (*Id.* at 4.) The Policy included specific "Covered Risks" for which Chicago Title would provide indemnity and defense. (*Id.*) Covered Risk 5 provides that the insured will be covered when "[s]omeone else has a right to limit Your use of the Land." (*See* Policy 2 ¶ 5, ECF No. 1-1.) Covered Risk 6 provides that the insured will be covered when:

> Your Title is Defective. Some of these defects are:
> a. Someone else's failure to have authorized a transfer or conveyance of your Title.
> b. Someone else's failure to create a valid document by electronic means.
> c. A document upon which Your Title is based is invalid because it was not properly signed, sealed, acknowledged, delivered or recorded.
> d. A document upon which Your Title is based was signed using a falsified, expired, or otherwise invalid power of attorney.
> e. A document upon which Your Title is based was not properly filed, recorded, or indexed in the Public Records.
> f. A defective judicial or administrative proceeding.

(*Id.* at 2 ¶ 6.) The Policy specifically excludes coverage for certain claims such as those arising out of a lack of right to use any land outside the area specifically described in the policy, as well as claims arising out of flooding. (*Id.* at 4 ¶¶ 6(a), 8.)

Four days after closing on their new home, the Batstones met the owners of the neighboring property, 1002 Covington Way, Annapolis, MD 21401, William Atkins and Nancy Wheeler (the "Atkins"). (ECF No. 3-1 at 2.) The Atkins informed the Batstones that

2

they were in the midst of a long and contentious dispute with Mark Five Development Inc. and Mark Five Construction Inc. ("Mark Five"), the developer and the builder of the property who sold the home to the Batstones. (*Id.*) The dispute involved stormwater runoff from the Batstone's new property. (*Id.*) The Atkins allege that the grading and construction by Mark Five during the development of the Batstone's home and the installation and placement of the Batstone's driveway have caused significant runoff onto the Atkins' lot. (*See* Second Amended Compl., ECF No. 1-2.) In other words, the Atkins claim that Mark Five, and now the Batstones as the new owners of the property, do not have the right to channel excess water onto their land. At the time the Batstones spoke with the Atkins, the Batstones were unaware of this dispute and the underlying issues regarding runoff onto the Atkins' property. (ECF No. 3-1 at 2.) The Atkins notified the Batstones that they planned to bring a lawsuit naming both Mark Five and the Batstones. (*Id.*)

Upon learning of the dispute and the pending suit against them, the Batstones contacted Chicago Title about beginning the claims process and requesting defense against the Atkins in their suit under the terms of the Policy. (*Id.* at 2-3.) The Batstones claimed that the lawsuit was covered by the Covered Risk 5, which protects the insured when "[s]omeone else has a right to limit Your use of the Land," as well as Covered Risk 6, which covers defects in title. (*Id.* at 4.) On October 5, 2018, Chicago Title notified the Batstones that they were denying their claim because, at that time, no legal action had been taken. (*Id.* at 3.) In denying the claim, Chicago Title also advised the Batstones that the issues described in a draft of the Atkins' complaint did not fall within the insuring provisions of the purchased Policy. (*Id.*)

3

In February 2019, the Atkins filed their lawsuit in the Circuit Court for Anne Arundel County in Annapolis. *See Atkins v. Mark Five Dev.*, No. C-02-CV-19-000435 (Md. filed Feb. 8, 2019) ("*Atkins* lawsuit"). The Second Amended Complaint (ECF No. 1-2) ("*Atkins* Complaint") is the Atkins' current operative pleading. Upon notice of the suit, the Batstones again demanded that Chicago provide for their defense. (ECF No. 3-1 at 4.) Their demand claimed that the *Atkins* Complaint "ma[de] clear" that "the relief requested, if granted, would limit the Batstone's' use of the Land" and that, therefore, Chicago Title was obligated to provide the Batstones a defense in the litigation. (*Id.*) Count 2 of the *Atkins* Complaint alleged trespass and Count 3 alleged nuisance. (*See* ECF No. 1-2 at 6, 7.) The Batstones specifically pointed to the relief requested in Counts 2 and 3 to support their arguments. The relief sought for Count 2 is as follows:

> That the Court issue an injunction enjoining and ordering the Defendants Batstone to abate the trespass and to be responsible for the artificially altered storm waters flowing onto the Plaintiffs' property from the Batstone Property, and enjoining the Defendants to take all proper steps to correct and manage the storm water flowing from its property and to prevent the erosion and deterioration of Plaintiffs' property in the future.

(Second Amended Compl. 7, ECF No. 1-2.) The relief sought for Count 3 is as follows:

> That the Court issue an injunction enjoining and ordering the Defendants Batstone to abate the nuisance and to be responsible for the artificially altered storm waters flowing onto the Plaintiffs' property from the Batstone Property, and enjoining the Defendants to take all proper steps to correct and manage the storm water flowing from its property and to prevent the erosion and deterioration of Plaintiffs' property in the future.

(*Id.* at 8.) On April 1, 2020, Chicago Title again denied the Batstones' demand and refused them a defense in litigation. (ECF No. 3 at 9.)

The Batstones filed this action in this Court against Chicago Title on April 10, 2020, challenging the denial of their demand. (ECF No. 1.) The Batstones then moved for Partial Summary Judgment on April 17, 2020, claiming that the undisputed facts contained in the relevant pleadings in the *Atkins* litigation are within the coverage of the Policy and that the Batstones, as insureds, are entitled for a defense by Chicago Title. (ECF No. 3.) Pursuant to Local Rule 105.2 of this Court's Local Rules, on May 22, 2020, Chicago filed a Response in Opposition to the Batstones' motion and a Cross Motion for Summary Judgment, seeking declaratory judgment that the claims of the Batstones are not covered by the Policy and are excluded from coverage under the Policy. (ECF No. 11 and 12.)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see*

5

*also Scott v. Harris*, 550 U.S. 372, 378 (2007).

If both parties have filed motions for summary judgment, then this Court "must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond*, 475 F.3d 633, 637-38 (4th Cir. 2007) (internal quotation marks omitted). Regardless, this Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656-60 (2014) (per curiam).

## ANALYSIS

As the basis of this Court's jurisdiction lies in diversity of citizenship, under 28 U.S.C. § 1332(a), Maryland law applies. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n. 3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Under Maryland law, in the interpretation of an insurance contract courts follow the general rules of contract construction. *See Cheney-Bell Nat'l Life Ins. Co.*, 556 A.2d 1135, 1138 (Md. 1998); *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985). Additionally, "Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer." *Id.* As such, principles of contract law govern the title insurance policy, and the rights and obligations of the parties are determined

by the terms of that contract.  *Columbia Town Ctr. Title Co. v. 100 Inv. Ltd. P'ship.*, 36 A.3d 985, 1005 (Md. Ct. Spec. App. 2012).  "[I]f no ambiguity in the terms of the insurance contract exists, a court has no alternative but to enforce those terms."  *Dutta v. State Farm Ins. Co.*, 769 A.2d 948, 957 (Md. 2001) (citing *Kendall v. Nationwide Ins. Co.*, 702 A.2d 767, 773 (Md. 1997)).

### A. There Is No Covered Risk Within the Terms of the Policy

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."  *Taylor v. NationsBank N.A.*, 776 A.2D 645, 651 (Md. 2001).  The Batstones claim that Chicago Title breached the contract between the parties when it refused to provide a defense under the terms of the purchased Policy.  The Batstones first point to Covered Risk 5, which covers the risk that "[s]omeone else has a right to limit Your use of the Land."  (*See* Policy 2, ECF No. 1-1.)  "Land" is defined by the Policy as "the land or condominium unit described in paragraph 3 of Schedule A and any improvements on the Land which are real property."  (*Id.* at 4 ¶ 1(d).)  Schedule A describes the Land as the lot owned by the Batstones and "[t]he improvements thereon being known as 1003 Covington Way, Annapolis, Maryland 21401."  (*Id.* at 7, Sch. A.)  The Plaintiffs' burden in this case is to show that allegations of the *Atkins* Complaint in the state action against them demonstrate that the Atkins have the right to limit the Batstones' use of their lot.  In other words, the question in this case is whether in requesting that the Batstones take action to stop excess water from running onto the Atkins' property, the Atkins have sought to limit the Batstones' right to use their own land.  In fact, the Atkins seek the opposite: they seek redress for limitations placed on the ordinary use and enjoyment of their *own* land.  (*See* Second

7

Amended Compl. 6-7, ECF No. 1-2.) The *Atkins* lawsuit challenges the *Batstones'* right to affect the *Atkins'* property.

Count 2 of the *Atkins* Complaint alleges that the "continuing excessive flow of swales of water, plant erosion, and sediment upon the Plaintiffs' property from the Batstones' property is a continued trespass, and constitutes an intentional interference with Plaintiffs' possessory interest and use of their property." (*Id.* at 6.) With respect to the Batstones, the *Atkins* Complaint specifically alleges that they have "failed, despite repeated requests to remedy the storm water runoff, which amounts to a continuing trespass upon the Atkins property." (*Id.* at 7.) Accordingly, the Atkins request an injunction enjoining and ordering the Batstones to abate the trespass and take steps to correct and manage storm water flowing from their property. (*Id.*) Count 3 of *Atkins* Complaint alleges the alternative that the excessive water flow is a private nuisance, a nontrespassory invasion of another's interest in the private use and enjoyment of land. (*Id.*) The requested relief with respect to the Atkins' nuisance claim is the same injunctive relief. (*Id.*)

The Batstones are correct that if the *Atkins* suit is successful and the state court orders the relief sought under Count 2 or Count 3, they will be required to take affirmative action to abate the storm water flow causing erosion to the Atkins' property. (*See* ECF No. 3-1 at 7.) However, the Batstones' assertion that this is somehow a limitation of their use of their own land is simply without merit. The Atkins are not alleging that they have "a right to limit [the Batstones'] use of the Land" within the meaning of the covered risks in the Policy. As noted by Chicago Title, examples of this sort of limitation would include mandating where an insured landowner must locate a septic system, *see, e.g.*, *Eleazer v. First Am. Title Ins.*

*Co.*, No. 75097-6-1, 2017 WL 1137215, at *3 (Wash. App. Mar. 27, 2017), and asserting an easement over the insured property, *see, e.g.*, *Bourne v. Steward Title Guar. Co.*, No. PB-09-00270, 2011 WL 635304, at *8 (D.N.H. Feb. 16, 2011); *Cohn v. First American Title Ins. Co.*, No. A126228, 2010 WL 3342971, at *8 (Cal. Ct. App. Aug. 26, 2010). In contrast, the *Atkins* Complaint asks the Batstones to take action to stop trespassing onto their land, or in the alternative, stop their nontrespassory invasion of the use and enjoyment of their land. Quite simply, being prohibited or enjoined from encroaching upon a neighbor's property is not a limitation of one's own use of one's own property.

Indeed, if this Court were to accept the Batstone's interpretation of Covered Risk 5, any objections to obnoxious activity on the Batstones' property could be claimed to be a "limit" on their right to use their property, triggering coverage under their title insurance policy. No landowner has the right to trespass onto a neighbor's property, or to invade or limit that neighbor's use or enjoyment of their own land. When a neighbor seeks to stop a continuing trespass by another neighbor, that effort to enforce their rights is not a limitation on the trespasser's use of his land.

As for the Batstones' second argument that Covered Risk 6 applies to the *Atkins* lawsuit, there is simply no genuine issue with respect to such a claim. Covered Risk 6 protects the insured in the event that his title is defective. (*See* Policy 2 ¶ 6, ECF No. 1-1.) By the terms of the Policy, "title" means "the ownership of Your interest in the Land, as shown in Schedule A." (*Id.* at 4 ¶ 1(d).) Nothing in the *Atkins* lawsuit appears to challenge the Batstones' title to their land. The Batstones claim they have a right to discharge on the "Plat" and that a court decree that restricts the Batstones' right to use this "easement" would

9

bear on the Batstones' title. (*See* ECF No. 13 at 12.) However, the "Exceptions" section of the Policy specifically provides that the policy holder is "not insured against loss, costs, attorneys' fees, and expenses resulting from" matters related to the relevant plats. (*See* Policy 8, Sch. B ¶ 10, ECF No. 1-1.) Further, the Atkins do not argue that the Batstones do not own their land due to some defect in title as listed in Covered Risk 6. They do not argue that someone "failed to authorize a transfer," a document upon which the title is based "was not properly signed, sealed, acknowledged, delivered or recorded," or there was "a defective judicial or administrative proceeding." (*Id.* at 2, ¶ 6.) The Batstones' do not have a right to trespass onto the Atkins' property, nor a right to invade their property in the form of a nuisance. A court's order to abate such a trespass or nuisance is simply not a threat to the Batstones' title to their property.

### B. The Subject Matter of the State Litigation is Within the Exclusions to the Policy

Exclusion 6(a) of the Policy provides that the lack of a right to any land outside the area specifically designated in the Policy, i.e. "1003 Covington Way, Annapolis, Maryland," is excluded. (*See* Policy 4 ¶ 6(a), ECF No. 1-1.) The land owned by the Atkins' family at 1002 Covington Way, Annapolis, Maryland is simply not within the terms of the Policy. Furthermore, Exclusion 8 specifically provides for the exclusion of any claims arising from flooding of the Batstones' property. (Id. at 4 ¶ 8.) There is simply no way that the ambit of the Policy can be extended to flooding on the Atkins' property.

The Batstones' discussion of the general rule that an insurer has the duty to defend the insured from all claims that are "potentially covered" by the policy does not provide any recourse for the Batstones. (*See* ECF No. 13 (citing *Walk v. Hartford Cas. Ins. Co.*, 852 A.2d

10

98, 106 (Md. 2004)).)  As the Maryland Court of Appeals explained in *St. Paul Fire & Marine Insurance Co. v. Pryseski*:

> In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage?

438 A.2d 282, 285 (Md. 1981).  The Court continued, explaining that the "rule" that "the insurer has a duty to defend if the allegations of the tort suit raise a 'potentiality' that coverage exists, is generally applicable only to the second question set forth above." *Id.* The Batstones' claims are squarely outside the coverage set by the terms of the Policy, and therefore, it cannot be said that depending on the outcome of the *Atkins* litigation, their claims might potentially be covered.

## CONCLUSION

In sum, Chicago Title has no duty to defend the Batstones in the *Atkins* lawsuit. Accordingly, the Plaintiffs' Motion for Partial Summary Judgment (ECF No. 3) is DENIED; and Defendants' Cross Motion for Summary Judgment (ECF No. 12) is GRANTED.

A separate Order follows.

Dated: November 2, 2020

/s/
Richard D. Bennett
United States District Judge